UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **RICO NEWMAN** | **CIVIL ACTION** |
| **VERSUS** | **NO. 25-2478** |
| **OUR LADY ANGELS CORP., ET AL.** | **SECTION "A"(4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and(2). Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

**I.   Background**

    **A.   Complaint (ECF No. 1)**

Plaintiff Rico Newman ("Newman") is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center ("RCC"). ECF No. 1, ¶II, at 2. Newman filed this *pro se* and *in forma pauperis* suit pursuant to 42 U.S.C. § 1983 against Our Lady Angels Corporations, University Medical Center Corporations, Securus Technologies, Ryan Williams, Lt. Maleik, Travis Day, Karla Wheat, Kevin Luper, Seth Smith, Floyd Brooks, Medical Director Juan Martinez, Unidentified Parties, Johnathan Augustine, Cynthia C. Sumrall, Truly Dillon, Jennifer Bigner, and Brook Thomas ("Defendants"). *Id.*, ¶III(B)-(G), at 3; *id.* at 5-6.

Newman filed a 157-page complaint raising claims pertaining to his medical care and treatment while housed in RCC. In sum, Newman alleges that after he dislocated and broke his shoulder on June 11, 2024, he was taken to Our Lady Angels hospital where he was sedated to fix

his shoulder. *Id*., ¶IV, at 4. In addition to the shoulder incident, Newman states he received medical care at University Medical Center on October 25, 2024, for another incident where he suffered multiple stab wounds, particularly to his left eye. *Id*. at 26. Newman describes a conspiracy between Our Lady Angels hospital, University Medical Center, and RCC where metal electrical devices were implanted into various parts of his body so that RCC officials can control and clone him. *Id*. at 23-24. He states jail officials can control the devices by sending signals to his brain and other body parts through the Securus/JPAY system. Further, Newman claims that since he went to University Medical Center, he experiences a blue radiation light that will scan through his left eye. *Id*. at 36.

Newman describes multiple instances that he claims he was denied medical care. In one instance, Newman states he had a cracked wisdom tooth in 2024 and requested dental care. *Id*. at 42. He states he was given x-rays and was told he would be treated. Newman eventually received dental care at the University Medical Center Dental Department. Newman claims he sent multiple requests for medical care and on July 1, 2025, he was called to medical. *Id*. at 45. At that visit, he informed the nurse that multiple inmates were able to listen to his thoughts, so it was clear that something was secretly planted inside of him. Newman states the nurse reviewed his x-rays and informed him that they appeared fine but refused to let him read them or give him a copy of them. He states his request to the nurse for new x-rays was also denied.

The following day, on July 2, 2025, Newman claims he was called to see mental health agent Adrienne Seals. *Id*. at 47. Newman states he believes that mental health is RCC's cover up for when they are in the wrong so that inmates cannot receive the medical help they need. *Id*. at 47-48. Newman details multiple times where he went to medical expressing his concerns and he was seen by a medical employee, bloodwork was taken, or he was weighed. *Id*. at 49-51. On July

2

25, 2025, Newman states he was called to the medical building to see the eye doctor due to him complaining about the blue radiation light passing through his eye. *Id*. at 51. He states he was cleared by the eye doctor and told they would put in an order for glasses or sunglasses for him.

On August 1, 2025, Newman claims he was seen at the mental health clinic at RCC by Dr. Johnathan Augustine. *Id*. at 56. He states he informed Dr. Augustine about his discovery as to what happened to him, his injuries, and his health. Newman claims that Dr. Augustine offered him psychiatric medication. Newman states he denied psychiatric medication and told Dr. Augustine he needed medical help. Dr. Augustine informed him he could not do anything else to help him besides give Newman medication. As a result, Newman informed Dr. Augustine that he no longer needed to be called to the medical clinic because he is not a psychiatric patient.

As time went on, Newman states the radiation light in his left eye turned from blue to white. *Id*. at 59. On August 20, 2025, Newman states he called Crimestoppers to report his situation. *Id*. at 69. He states he was informed by Crimestoppers that his experience also constituted sexual assault, given that part of the tampering by doctors involved implanting devices into his genitals. On August 25, 2025, Newman claims he requested a self-declared emergency due to the implant in his genitals moving, hurting, frustrating, and causing harm to him every day. *Id*. at 70. Newman states he was seen by medical who examined his genitals and was informed that everything seemed normal. *Id*. at 71. Shortly after this time, Newman claims he received a disciplinary report that he knew he did not commit and that he started noticing that his identity was secretly being used at RCC. *Id*. at 72.

Newman claims once he started noticing that the Securus Technologies JPAY system was being used to connect to the illegal electronics inside the multiple parts of his body, he began reaching out to Securus Technologies support ticket agents. *Id*. at 93. He states when he uses the

JPAY kiosk machine he must act quickly due to his chest tightening up, his heart instantly hurting, and the fact that RCC officials can use the tablets to control the objects implanted in his genitals and buttocks. *Id*. at 93-94. Newman claims this results in him suffering from life threatening injuries, brain damage, and could cause early death or cancer. He states he has reported this to multiple officials and has been ignored and denied medical treatment.

On September 25, 2025, Newman claims he was placed on the call-out to see Dr. Johnathan Augustine again despite him informing Dr. Augustine he was not a psychiatric patient at his prior visit. *Id*. at 96. When asked how he was feeling, Newman states he informed Dr. Augustine he was feeling worse than his last visit and that he was denied medical care. He claims Dr. Augustine tried to force him to take psychiatric medicine and referred to it as "brain medication." Newman claims he again told Dr. Augustine to not call for him anymore as he is not a psychiatric patient. *Id*. at 97.

On September 29, 2025, Newman states he was called to the medical building to see Dr. Juan Martinez. *Id*. at 99. Newman claims that Dr. Martinez told him the computers were down and told Newman not to ask about his medical records. *Id*. at 100. Newman claims that those statements were evident of Dr. Martinez participating in the illegal operation going on at RCC by tapping into the electronic objects and seeking Newman's personal information. He claims he told Dr. Martinez what he had been experiencing and Dr. Martinez stopped him and said, "so you think she could hear your thoughts?" and pointed at a female nurse. Newman claims he informed Dr. Martinez that he has mental objects inside different parts of his body that give individuals the ability to connect and tap into his brain though devices due to Our Lady Angels Hospital employees secretly implanting them into him during a surgical procedure. He states he also told Dr. Martinez that something is moving inside his genitals and that metal is pressing against his chest and lower spine.

After sharing this information with Dr. Martinez, Newman claims Dr. Martinez told him he was delusional and to take his mental health medication. *Id*. at 100-101. Newman insisted to Dr. Martinez that he is not a mental health patient and is not taking mental health medication. *Id*. at 101. He claims Dr. Martinez told him there was nothing he could do for Newman, that he is delusional, to go take his medicine, and then proceeded to walk away. Newman states after Dr. Martinez walked off that a nurse walked up to him discussing mental health. Newman claims he reiterated to the nurse that he is not a psychiatric patient, will not take any medication, and that he needs the medical help he requested. On October 3, 2025, Newman states he met with Adrienne Seals, Assistant Director of Mental Health at RCC, and explained to her how he was refused medical treatment by Dr. Juan Martinez due to him secretly diagnosing Newman as a psychiatric patient. *Id*. at 111.

Throughout his complaint Newman describes, at minimum, 38 (thirty-eight) instances where he wrote administrative grievances or letters to the Defendants detailing his alleged conspiracy and the inadequate medical treatment he is receiving at RCC. *Id*. at 49, 55, 58, 61, 63, 76, 70, 71, 72, 74, 78-79, 82, 83, 84, 87, 88, 89, 90, 91, 92-93, 94, 95-96, 97-98, 98-99, 103-04, 107-08, 111, 112, 113, 113-16, 118, 119, 119-20, 120-21, 122. Newman states that many of his grievances went unaddressed, were denied, or were denied for his failure to properly submit them and that the prison failed to follow its own policies.

As relief, Newman requests that the Court declare the acts and omissions he describes as a violation of his rights, award him compensatory, punitive, and nominal damages, order injunctive relief, award him attorney's fees and costs, and requests that he regain full citizenship. *Id*., ¶V, at 127.

B.     **Motion for Preliminary Injunction (ECF No. 7)**

After the filing of his complaint, Newman filed a Motion for Leave to File a Motion for Preliminary Injunction. ECF No. 7. In his request, which is liberally construed as a motion for preliminary injunction, Newman states he is suffering from serious life-threatening injuries while at RCC. *Id*. at 1-2. He states the only way he will receive proper medical care is with an order from the Court, or else his pain and suffering will continue. *Id*. at 4. He requests that the Court provide a trustworthy hospital for him to receive x-rays and other necessary treatment. *Id*. at 5. Newman also claims that receiving independent medical care will prove the alleged facts of his suit against Defendants.

II.    **Standards of Review**

A.     **Statutory Review for Frivolousness**

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d

1003, 1005 (5th Cir. 1998)).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28).  Thus, the Court must determine whether plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

### B.    Preliminary Injunction

An injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion."  *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (citation omitted).  An injunction is to be the exception, not the rule.  *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).  Furthermore, in the prison setting, requests for an injunctive relief are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'"  *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).  "Except in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management, including prison discipline and classification of inmates.  *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971) (affirming denial of injunction to obtain release from administrative segregation).

In addition, injunctive relief is to prevent future violations, not to punish a defendant for alleged past behavior.  *SEC v. Blatt*, 583 F.2d 1325, 1334 (5th Cir. 1978); *see also Armstrong v. Turner Indus., Inc.*, 141 F.3d 554, 563 (5th Cir. 1998) ("[t]o pursue an injunction . . . the [plaintiff] must allege a likelihood of future violations of their rights by [the defendants] not simply future effects from past violations.").  For these reasons, "[s]peculative injury is not sufficient."  *Holland*

*Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985) ("Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant."); *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011).

The Supreme Court has explained that a plaintiff seeking an injunction must show that: (1) he has suffered an irreparable injury, (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury, (3) a remedy at equity is warranted when considering the balance of hardships between the plaintiff and defendant, and (4) the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *United Motorcoach Association, Inc. v. City of Austin*, 851 F.3d 489, 492-93 (5th Cir. 2017). These standards are essentially the same for both preliminary and permanent injunctions, except to obtain a permanent injunction, the plaintiff must normally show actual success on the merits rather than a mere likelihood of success. *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987); *VRC LLC v. City of Dallas*, 460 F.3d 607, 611 (5th Cir. 2006) (listing "success on the merits" as a prerequisite for obtaining a permanent injunction).

In keeping with this, Fed. R. Civ. P. 65 sets forth the basic framework for the issuance of a preliminary injunction or temporary restraining order. Under this rule, a preliminary injunction may issue *inter alia* "only on notice to the adverse party." FED. R. CIV. P. 65(a)(1). For a temporary restraining order to be issued under Rule 65 without notice to all parties, a plaintiff is required to present "specific facts in an affidavit or a verified complaint [that] clearly show that immediate and irreparable injury, loss, or damage will result to [plaintiff] before the adverse party can be heard in opposition[.]" FED. R. CIV. P. 65(b)(1)(A). The plaintiff also must certify "in writing any efforts made to give notice and the reasons why it should not be required." FED. R. CIV. P. 65 (b)(1)(B).

**III.    Analysis**

    **A.    Motion for Preliminary Injunction Should Be Denied**

While Newman states he sought concurrence from Defendants' counsel, his motion for a preliminary injunction bears no indication that he served defendants before filing his motion for a preliminary injunction. ECF No. 7 at 1. Despite this, Newman's motion is devoid of any argument or reasons why injunctive relief should be issued in this case.

Considering the factors listed above, Newman did not discuss nor clearly demonstrate that he will prevail on the merits of the claims contained in his original complaint. Deliberate indifference to a serious medical need, moreover, is an extremely high standard to meet. Claims of negligence or a disagreement with treatment will not suffice. *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 755 (5th Cir. 2001). His mere belief that he will suffer an irreparable injury if the injunction is not granted is conclusory. He has not alleged to have suffered an irreparable injury or one not subject to remedial compensation. A party's injury, whether emotional or physical, and other harm are not irreparable for purposes of Rule 65 if an adequate alternate remedy in the form of monetary damages is available. *Brennan's, Inc. v. Brennan*, 289 F. App'x 706, 707 (5th Cir. 2008).

As discussed below, Newman has not presented a non-frivolous claim in his complaint to support any suggestion that the named defendants have cause him irreparable harm or are likely to cause future harm to entitle him to injunctive relief. Thus, Newman's motion is insufficient to state a basis for this court to consider or issue injunctive relief at this time. The motion should be denied.

    **B.    Frivolousness Review**

Dismissal for frivolousness or failure to state a claim under § 1915(e)(2)(B)(ii) and § 1915A(b)(1) "turns on the sufficiency of the 'factual allegations' in the complaint." *Smith v.*

9

*Bank of America, N.A.*, 615 F. App'x 830, 833 (5th Cir. 2015) (quoting *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014)).  The plaintiff's facts and allegations must be sufficient to allow the Court "to infer more than the mere possibility of misconduct." *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (citation omitted).  For the following reasons, Newman's factual allegations fall far short of what is required to state a non-frivolous claim against the Defendants.

### a) <u>**Deliberate Indifference and Denial of Medical Care**</u>

Newman alleges a conspiracy between Our Lady Angels Hospital, University Medical Center, and RCC officials to implant various electronic devices into his body during treatment he received while at each hospital that the facility can control. This includes devices in his chest, spine, eye, and genitals. Newman states that RCC can use these devices for mind control as well as a method to steal his identity.

Courts have considered allegations of devices implanted in the body to be so delusional as to warrant dismissal as frivolous. *See, e.g., Johnson v. Drug Enforcement Agency*, 137 F. App'x 680 (5th Cir. 2005) (dismissing as frivolous plaintiff's allegations that the DEA implanted a transmitter in his scalp); *Dodson v. Haley*, No. 16-6196, 2017 WL 3224485 (6th Cir. May 17, 2017) (dismissing as frivolous plaintiff's allegations that the defendants "installed 'eye cameras' and 'thought-processing devices' " in plaintiff's body to read his mail and monitor his food in order to tamper with it); *Manco v. Does*, 363 F. App'x 572, 575 (10th Cir. 2010) (dismissing as frivolous plaintiff's allegations that "prison officials implanted a radio frequency device in his body to track his movements and thoughts"); *Mason v. Texas*, 2018 WL 6930108, at *1 (N.D. Tex. Oct. 17, 2018), *rec. adopted*, 2019 WL 1330341 (N.D. Tex. Jan. 14, 2019) (dismissing claims as frivolous where plaintiff alleged defendants used doctors to place microphones in her ears or teeth and the

microphones were damaging her health); *Grant v. U.S. Gov't*, 2014 WL 6685035, at *4 (E.D. Cal. Nov. 25, 2014) ("Plaintiff's claims that the Government implanted a device in him can best be described as frivolous.").

Broadly construing his complaint, Newman appears to bring claims of deliberate indifference and denial of medical care surrounding treatment of his alleged implanted devices. Deliberate indifference by prison personnel or medical staff to an inmate's serious medical needs constitutes the "unnecessary and wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 440 F. App'x 263, 264 (5th Cir. 2011). A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. LaPorte Cnty. Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). Deliberate indifference is manifested in the provider's intentional denial of medical care or intentional interference with the treatment once prescribed. *Farmer*, 511 U.S. at 847. To state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*. at 833.

Newman's complaint does not allege or demonstrate this level of intentional indifference by any of the medical providers under the standards set forth above. As the United States Fifth Circuit has found, to satisfy the "extremely high standard" of deliberate indifference, a plaintiff

"must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino v. Tex. Dep't. Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (internal quotation marks and citations omitted).  Newman does not allege that he was wholly ignored or denied medical care or treatment for his alleged implanted devices.  Instead, he acknowledges that in many instances each of his complaints were addressed by various medical staff, Dr. Augustine, or Dr. Martinez when he requested care or shortly thereafter.  His care, as he describes it, included multiple visits with medical staff, diagnostic x-rays, surgery, follow up treatment at University Medical Center, and mental health services.  While he clearly is dissatisfied with the care he received and the methods of treatment by the various medical personnel, this type of disagreement is not enough to state a non-frivolous claim of medical indifference under the foregoing standards.  *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991); *Vaughn v. Bassett*, No. 22-10962, 2024 WL 2891897, at *4 (5th Cir. 2024) (". . . disagreement about the recommended medical treatment is generally not sufficient.") (quoting *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018)).

Newman alleges that he was denied medical care multiple times by Defendants when he was refused anything other than mental health services. Newman's mere disagreement with Defendant's level of care is not a basis for liability under the Eighth Amendment.  *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019); *Gobert*, 463 F.3d at 346.  The Defendants' determination about the form of treatment or whether to provide treatment at all is "a classic example of a matter for medical judgment" that does not constitute deliberate indifference.  *Estelle*, 429 U.S. at 107.  Even assuming that Defendants could have exercised a different treatment plan or erred in their professional judgment, allegations of negligence or even malpractice are insufficient to establish

12

deliberate indifference and do not state a constitutional violation. *Id.* at 106; *Gibson*, 920 F.3d at 219-20.

Accordingly, Newman's claims against Defendants regarding the conspiracy to implant electronic devices into his body, deliberate indifference, and denial of medical care should be dismissed pursuant to 28 U.S.C. § 1915, § 1915A and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

### b) <u>**Administrative Grievances**</u>

Newman describes multiple instances where he filed administrative grievances or wrote letters to prison officials that either went unanswered, were denied, or denied for failing to follow the proper procedure for filing them. Newman also states that RCC has failed to follow its own procedures and policies on multiple occasions.

Newman cannot succeed on his claims alleging failure to follow prison or Department of Correction policies and procedures. A plaintiff is not constitutionally entitled to have the prison follow its own rules. *Perry v. Allemand*, 687 F. App'x 352, 353 (5th Cir. 2017) (citations omitted).

Nor can Newman succeed on his claims that defendants failed to act on or respond to his grievances. The Fifth Circuit has repeatedly held that an inmate does not have a constitutional right to an adequate and effective grievance procedure, or to have his complaints investigated and resolved to his satisfaction. *Stauffer v. Gearhart*, 741. F. 3d 574, 587 (5th Cir. 2014) (citing *Geiger v. Jowers,* 404 F.3d 371, 373–74 (5th Cir. 2005)); *Propes v. Mays*, 169 F. App'x 183, 184–85 (5th Cir. 2006) (concluding that prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor) (citing *Geiger*, 404 F.3d at 373–74). A prisoner has no protected liberty interest in the adequacy or the result of prison administrative

grievance procedures. *Smith v. Horton*, 670 F. App'x 872, 873 (5th Cir. 2016) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995).

Thus, Newman's claims against Defendants regarding his administrative grievances and failure to follow prison policies should be dismissed pursuant to 28 U.S.C. § 1915 and § 1915A as frivolous and for failure to state a claim for which relief can be granted.

## RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff Rico Newman's **Motion for Leave to File a Motion for Preliminary Injunction (ECF No. 7)** be **DENIED**.

It is further **RECOMMENDED** that Newman's 42 U.S.C. § 1983 claims against defendants Our Lady Angels Corporations, University Medical Center Corporations, Securus Technologies, Ryan Williams, Lt. Maleik, Travis Day, Karla Wheat, Kevin Luper, Seth Smith, Floyd Brooks, Medical Director Juan Martinez, Unidentified Parties, Johnathan Augustine, Cynthia C. Sumrall, Truly Dillon, Jennifer Bigner, and Brook Thomas be **DISMISSED WITH PREJUDICE** pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e as frivolous and for failure to state a claim for which relief can be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object. *Douglass v. United Servs. Auto. Assn.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[1]

        New Orleans, Louisiana, this __9th__ day of February, 2026.

_____<br>
**KAREN WELLS ROBY**<br>
**UNITED STATES MAGISTRATE JUDGE**

---

[1] *Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.